[Civ. No. 48894. Second Dist., Div. Three. June 16, 1977.]

ROBERT WYANT MANN, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Ollestad & Freedman, Alan L. Freedman and Norman T. Ollestad for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Robert H. Francis, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**COBEY, J.**—Plaintiff, Robert Wyant Mann, appeals from a judgment on a directed verdict in his personal injury action in favor of defendant, State of California. The fundamental question presented is whether liability may attach to the state by reason of a state traffic officer, after investigation by him, leaving motorists in a dangerous situation on a freeway where some were subsequently killed and others injured as a result of another motorist's negligence. We hold that such liability may attach.

### FACTS

The pertinent facts are these.[1] On December 24, 1971, about 11:30 a.m., State Traffic Officer Harvey Lane (then a probationary officer with the California Highway Patrol), on patrol in his fully equipped and distinctively marked patrol car, saw two cars stranded in the speed-change lane of the San Bernardino Freeway, under the Archibald Avenue overcrossing. He pulled his vehicle in behind them, turned on his rearward flashing amber light, and tried to get the forward car started. In doing so he stood in the speed-change lane himself and failed to instruct the occupants of the stalled cars and other interested motorists such as plaintiff, some of whom had gotten out of their cars, to get back into them and to avoid standing between the stalled cars. A few minutes

---

[1]This statement of facts constitutes a summary of the relevant evidence in the light most favorable to plaintiff. (See *Dailey* v. *Los Angeles Unified Sch. Dist.*, 2 Cal.3d 741, 745 [87 Cal.Rptr. 376, 470 P.2d 360].)

after a tow truck operator appeared at the scene, the officer left to resume his normal patrol without advising any of those present that he was leaving.[2] His departure left the stranded cars unprotected by the rearward flashing amber light of his patrol car. He also failed to put out upon the freeway any protective flares and did not wait for the tow truck, also equipped with a rearward amber flashing light to assume the protective position his patrol car was vacating. In acting in this manner, Lane violated several guidelines of the California Highway Patrol designed to enhance the safety of motorists on freeways.[3]

A few minutes after the officer left, a 15-year old car, driven by an 81-year-old driver, blind in his right eye, sideswiped one of the two cars and struck the people around them. He thought that he was in the slow lane of the freeway rather than in the speed-change lane running between an on-ramp and an off-ramp. At the time of the accident, it was raining hard, the pavement of the roadway was slick, and visibility was limited.

In granting the motion for the directed verdict, the trial court stated that it concluded as a matter of law from the evidence that the *sole cause* of the accident was the negligence of the partially blind driver. The record does not support such a conclusion. The evidence did not foreclose a finding that if proper protection had been provided the collision would not have occurred. Anyone legally responsible for the victims of the accident being in their exposed position could therefore have been found to have contributed in a substantial way to the causation of the accident. (See *Vesely* v. *Sager,* 5 Cal.3d 153, 163-164 [95 Cal.Rptr. 623, 486 P.2d 151]; *Schwartz* v. *Helms Bakery Limited,* 67 Cal.2d 232, 241-242 [60 Cal.Rptr. 510, 430 P.2d 68].) The jury could also have found that the independent intervening negligent conduct of the partially blind driver was reasonably foreseeable by Officer Lane. It would not in that event have been a superseding cause, but merely the immediate cause of plaintiff's injuries. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, p. 2910; Rest.2d Torts (1965) §§ 447, 449, pp. 478, 482.)

[2]Prior to departing, Officer Lane did inquire of the tow truck operator whether he would be able to handle the situation—i.e., both vehicles.

[3]See California Highway Patrol Guidelines HPG 70.6, Enforcement Tactics, chapter 9, at pages 2-3; HPG 70.18, Freeway Enforcement, chapter 2, at pages 4, 5 and 12.

■ The state denies liability for several reasons. The first of these is that Officer Lane's investigation of the plight of the stranded motorists prior to the accident was a discretionary act, and under Government Code section 820.2 a public employee is not liable for injuries resulting from an act or omission involving the exercise of discretion. Officer Lane's decision regarding whether to investigate or not may have been a discretionary decision[4] (see *McCarthy* v. *Frost*, 33 Cal.App.3d 872, 875 [109 Cal.Rptr. 470]), but once he decided to investigate, any negligence on his part in his ministerial performance of the investigation was clearly beyond the protection of the statutory discretionary immunity. (See *McCorkle* v. *City of Los Angeles*, 70 Cal.2d 252, 261-262 [74 Cal.Rptr. 389, 449 P.2d 453]; *Sava* v. *Fuller*, 249 Cal.App.2d 281, 291 [57 Cal.Rptr. 312]; *Tarasoff* v. *Regents of University of California*, 17 Cal.3d 425, 445 [131 Cal.Rptr. 14, 551 P.2d 334].)

■ The state also denies liability on the further ground of the statutory police protection immunity. Government Code section 845 provides that neither a public entity nor a public employee is liable for failure to provide police protection—either at all or in an insufficient amount. The protection that Officer Lane is claimed to have failed to provide to plaintiff in this case is protection of the safety of plaintiff from passing traffic. This is not police protection in the ordinary sense of the term—that is, protection against crime. It is instead merely protection in a particular situation against primarily the negligence of passing motorists. Furthermore, this failure on Officer Lane's part does not involve a lack of or insufficiency in police protection as such. Lane left the stranded motorists simply to resume his routine patrol.

This is not the type of failure of police protection that section 845 was intended to immunize. As the California Law Revision Commission, the originator of the section (which the Legislature did not change), has pointed out in its comment to the section and elsewhere, the section was designed to prevent political decisions of policy-making officials of government from being second-guessed by judges and juries in personal injury litigation. (See 4 Cal.Law Revision Com. Rep. (1963) pp. 827, 860.) In other words, essentially budgetary decisions of these officials

---

[4]It can be argued, though, that this decision was not within the scope of the statutory discretionary immunity because it was neither a carefully balanced basic policy decision nor a planning (as opposed to an operational) decision. (See *Johnson* v. *State of California*, 69 Cal.2d 782, 793-795 [73 Cal.Rptr. 240, 447 P.2d 352]; *Elton* v. *County of Orange*, 3 Cal.App.3d 1053, 1058 [84 Cal.Rptr. 27].)

were not to be subject to judicial review in tort litigation.[5] But what is charged here is not budgetary neglect but negligence by the officer in the performance of his investigation. Accordingly, the police protection immunity does not apply in this case.

■ There remains the question whether, immunity aside, Officer Lane was actionably negligent as a matter of general tort law. Government Code section 815.2, subdivision (a), provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the entity within the scope of his employment, if the act or omission would, apart from the section, have given rise to a cause of action against the employee. The negligence charged against Officer Lane here consists of his failure to do certain things which would have wholly or partially protected the stranded motorists and those about them, including plaintiff, which, as an expert in traffic safety, Officer Lane was enjoined to do, and in leaving them in a dangerous, unprotected position on a freeway after he had investigated and presumably become fully aware of their plight. This misconduct would appear to be a series of negligent omissions, though, rather than affirmative acts of negligence. Stated otherwise, these deficiencies in conduct look much more like nonfeasance than they do misfeasance. (See *Weirum* v. *RKO General, Inc.,* 15 Cal.3d 40, 49 [123 Cal.Rptr. 468, 539 P.2d 36].)

If this be so, then Officer Lane and, through him, the State of California can be held liable for these negligent omissions only if a special relationship then obtained between him and plaintiff. We believe on the basis of the following rationale and on the record before us viewed most favorably for plaintiff that such a relationship could have been found in this case. The California Supreme Court, Prosser and the Restatement Second of Torts all recognize that "special relationship" is an expanding concept in tort law. (See *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at p. 435, fn. 5; Prosser, Law of Torts (4th ed. 1971) § 56, pp. 339-340; Rest.2d Torts (1965) § 314A, coms. a, b.) As the

---

[5]The comment of the commission under the circumstances is at the very least strong indication of legislative intent. (See *Van Arsdale* v. *Hollinger,* 68 Cal.2d 245, 249-250 [66 Cal.Rptr. 20, 437 P.2d 508]; *Arellano* v. *Moreno,* 33 Cal.App.3d 877, 884 [109 Cal.Rptr. 421].)

This limitation upon the scope of the immunity has apparently been discussed in but one of three cases applying the immunity. (See *Susman* v. *City of Los Angeles,* 269 Cal.App.2d 803, 810, fn. 2, 815, 821 [75 Cal.Rptr. 240]; *Antique Arts Corp.* v. *City of Torrance,* 39 Cal.App.3d 588 [114 Cal.Rptr. 332]; *Hartzler* v. *City of San Jose,* 46 Cal.App.3d 6 [120 Cal.Rptr. 5].)

Restatement suggests, the law appears to be heading toward a recognition of the duty to aid or protect in any relation of dependence or of mutual dependence. (*Id.*, com. b; see also Fleming, Law of Torts (4th ed. 1971) p. 143.)

Clearly plaintiff was dependent upon Officer Lane here. Officer Lane was the expert in traffic safety and charged with specific responsibility for it on the stretch of freeway in question. (Cf. Comment, *Municipality Liable for Negligent Failure to Protect Informer: The Schuster Case* (1959) 59 Colum.L.Rev. 487, 502.) Once, having apprised himself of the dangerous position of the stranded motorists and those about them, such as plaintiff, he had a duty to exercise ordinary care to protect these people from traffic dangers at least to the extent of the already-mentioned readily available means of doing so.[6] While no special relationship may exist between members of the California Highway Patrol and the motoring public generally, or between the Patrol and stranded motorists generally, once a state traffic officer has chosen to investigate the plight of specific persons on a freeway and informed himself of the foreseeable danger to them from passing traffic, a special relationship requiring him to protect them by readily available means arises and liability may attach if the officer's limited duty to protect these people under these special circumstances is not performed. Stated otherwise, the foreseeable risk of harm to those people may have been unreasonable and, if so, Officer Lane, as a state traffic officer who had acquainted himself with their plight, had a duty to exercise ordinary care to protect them from such risk. (See *Hergenrether* v. *East*, 61 Cal.2d 440, 445 [39 Cal.Rptr. 4, 393 P.2d 164].)

In sum, then, viewing the evidence in this case in the light most favorable to plaintiff, as is required in a directed verdict situation, it was

---

[6]This result of possible liability on the part of the state can be reached by a somewhat different route. In *Hartzler* v. *City of San Jose, supra,* 46 Cal.App.3d at page 10, the court spoke as follows: "The common theme running through these decisions is the voluntary assumption by the public entity or official of a duty toward the injured party. Even though there is initially no liability on the part of the government for its acts or omissions, once it undertakes action on behalf of a member of the public, and thereby induces that individual's reliance, it is then held to the same standard of care as a private person or organization."

This is essentially an estoppel theory of liability and one which we regard as unnecessary in view of the already indicated language of Government Code section 815.2. In other words, in our view, possible liability is much the same in a situation of this kind, regardless of whether the defendant is a public entity or someone from the private sector.

at the very least a jury question as to whether Officer Lane's conduct constituted actionable negligence toward plaintiff proximately causing the injuries sued upon. Accordingly, the trial court should not have directed the verdict.

### DISPOSITION

The judgment for the State of California on directed verdict is reversed.

Allport, Acting P. J., and Potter, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 25, 1977. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.