[No. A036333. First Dist., Div. Five. Feb. 22, 1988.]

DONOVAN STANGLE, Plaintiff and Appellant, v.
FIREMAN'S FUND INSURANCE COMPANY, Defendant and
Respondent.

**COUNSEL**

Andrew H. Lange and Lange & Lange for Plaintiff and Appellant.

Paul C. Glusman for Defendant and Respondent.

**OPINION**

**LOW, P. J.**—Plaintiff Donovan Stangle brought suit against defendant Fireman's Fund Insurance Company for plaintiff's loss of a sapphire ring,

claiming Fireman's Fund could have prevented the theft of the ring by making a telephone available to summon help. The trial court found defendant had no duty to prevent the theft. We affirm.

Plaintiff purchased a sapphire and diamond ring in Honolulu, Hawaii, in December 1979 in exchange for a $30,000 promissory note that was due and payable in six months. Plaintiff testified he bought the ring "to hold it for a short period of time and sell it for a profit." When efforts to market the ring in Seattle proved unsuccessful, plaintiff asked Barnabas Britt, a former girlfriend, to attempt to sell the ring in San Francisco and she would be entitled to any sale proceeds in excess of $45,000.

Ms. Britt placed an advertisement for the ring, priced at $60,000. She was contacted by a man who identified himself as Barry Richards. Ms. Britt arranged for a meeting with Mr. Richards at MacArthur Park restaurant. She showed him the ring, which she had carried in her purse, and a written appraisal that placed the ring's replacement value at $103,000. They discussed price, and Mr. Richards told her he would be in contact.

Later that day, Mr. Richards telephoned Ms. Britt and told her his principal wished to purchase the ring for $50,000. At Mr. Richards's direction, the sale was to take place the next day at defendant's offices on the 14th floor of One Market Plaza in San Francisco. He explained to Ms. Britt that "the person that he represented wanted the ring photographed and insured before he left the premises with it."

Ms. Britt arrived at One Market Plaza with a friend, Maria Antonidias. Mr. Richards proceeded to the 14th floor while Ms. Britt and Ms. Antonidias retrieved the ring from a nearby safety deposit box. When the women arrived on the 14th floor it was lunchtime and most of the employees were gone. They were greeted by an employee, later identified as Jeanne Hallbach, who was sitting in for the receptionist. Mr. Richards arrived, and the three sat down at an empty desk. While Ms. Britt wrote out a bill of sale, Mr. Richards asked for the ring to have it photographed. Mr. Richards left with the ring, and neither Mr. Richards nor the ring was ever seen again.

Plaintiff does not contend defendant or any of its employees were parties to the crime. The facts upon which plaintiff seeks to premise defendant's liability were set out by Ms. Britt at trial: Ms. Britt testified that her friend "was right behind" Mr. Richards when she went to the receptionist to call for assistance. She explained to the receptionist that her ring had just been stolen, but the receptionist put her hand down on the phone and said, "I'm sorry. This is for building use only." After this, Ms. Britt took the elevator

down to the lobby, reported the theft to security, and the police were called. However, it was too late to apprehend the thief.

The main issue presented by plaintiff's complaint was whether defendant's employees owed Ms. Britt a duty, predicated on principles of general negligence, to make a telephone available to Ms. Britt so that she could summon aid. At the conclusion of trial, the court determined "no special relationship was created between the Plaintiff and the Defendant that would impose any duty on the Defendant to prevent the alleged loss." The court further stated in its intended decision: (1) there was no negligent conduct on the part of defendant; (2) the refusal to allow Ms. Britt the use of the telephone after the theft was *not* the proximate cause of any damage to the plaintiff; and (3) the proximate cause of plaintiff's loss was the negligent conduct of Ms. Britt in the manner she handled the sale and the plaintiff's negligence in entrusting the ring to an inexperienced agent without security or insurance.

█ Whether a duty to plaintiff exists is primarily a question of law. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) As a rule, "[a]bsent a special relationship giving rise to a duty to act, a person is under no duty to take affirmative action to assist or protect another, no matter how great the danger in which the other is placed, or how easily he could be rescued. [Citations.]" (*Clarke* v. *Hoek* (1985) 174 Cal.App.3d 208, 215 [219 Cal.Rptr. 845]; *Williams* v. *State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137].)

A narrow exception to this often harsh rule has been forged by the court when physical violence is threatened. (*Soldano* v. *O'Daniels* (1983) 141 Cal.App.3d 443 [190 Cal.Rptr. 310, 37 A.L.R.4th 1183].) In *Soldano,* it was held that a restaurant owner owed a murder victim a duty to permit a third person the use of a telephone to call police when a death threat was made. In reversing summary judgment, the court rejected the restauranteur's argument that common law never imposed a duty to rescue one in peril. The court held there was a duty to permit use of the telephone to summon emergency aid, but underlined the narrow scope of the new rule: "[T]he duty would arise if and only if it were clearly conveyed that there exists an *imminent danger of physical harm.*" (*Id.,* at p. 452, italics added.) The plaintiff herein argues by analogy that the rule announced in *Soldano* should be extended to "emergencies arising from all criminal conduct." Such a ruling would be a vast departure from the rule of nonliability for inaction, and we believe it would be ill-advised and unwarranted. (See *Clarke* v. *Hoek, supra,* 174 Cal.App.3d at pp. 218-219.)

█ Plaintiff next urges this court to find that a "special relationship" existed between plaintiff's agent, Ms. Britt, and defendant which would

impose an affirmative duty on defendant to aid Ms. Britt in summoning help. Special relationships, which remove bystander status and invoke a duty to rescue or protect, are often based on economic considerations—for instance, a common carrier to its passengers, an innkeeper to his guest, possessors of land who hold it open to the public, or one who has a custodial relationship to another. (See Rest.2d Torts, § 314A.) The court in *Soldano* acknowledged "[i]t would be stretching the concept beyond recognition" to find a special relationship existed between the person attempting to summon aid and the person refusing to allow the use of the telephone. (*Soldano* v. *O'Daniels, supra,* 141 Cal.App.3d at p. 449.) We agree.

■ Plaintiff would also bear the burden of showing defendant's negligence was the proximate cause of the injury. (*Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756, 765 [91 Cal.Rptr. 745, 478 P.2d 465].) Proximate cause has generally been held to be a question of fact. (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 55-56 [192 Cal.Rptr. 857, 665 P.2d 947]; *Fagerquist* v. *Western Sun Aviation, Inc.* (1987) 191 Cal.App.3d 709, 719 [236 Cal.Rptr. 633].) In this case, substantial evidence supported the judge's decision that plaintiff's loss was not caused by anything done or not done by defendant. The court heard the testimony of Walter Cracke, director of security for One Market Plaza at the time of the theft. Mr. Cracke testified that even if he *had* received a telephone call from someone in the building reporting a theft and describing the thief, he would not have detained anyone on that basis. His practice would dictate "[w]e send somebody up to you, or you come down to us." In light of this testimony, Ms. Britt's inability to gain immediate access to a telephone becomes inconsequential—she would have been required to personally report the incident in any event. Thus, the court's finding that defendant's conduct was not the proximate cause of plaintiff's loss is fully supported by the record and supplies one more reason to affirm this judgment.

The judgment is affirmed.

King, J., and Haning, J., concurred.